UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANEIKA GREER,

        Plaintiff,

                                           CASE No. 1:25-CV-1487

v.

                                           HON. ROBERT J. JONKER

MELINDA BRAMAN, et al.,

        Defendants.

_____/

## ORDER APPROVING AND ADOPTING
## REPORT AND RECOMMENDATION

The Court has reviewed Magistrate Judge Vermaat's Report and Recommendation (ECF No. 20) and Plaintiff's Objection to the Report and Recommendation (ECF No. 21). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED R. CIV. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge; the

Report and Recommendation itself; and Plaintiff's objections.    After its review, the Court finds the Magistrate Judge's Report and Recommendation is factually sound and legally correct.

## BACKGROUND

This case arises from the unfortunate death of Everett Greer while he was a prisoner at the Michigan Department of Corrections' Richard A. Handlon Correctional Facility.    The cause of Mr. Greer's death was a fentanyl overdose, and in this lawsuit Mr. Greer's estate contends that the overdose was preventable and only came about because corrections officers and their supervisors were deliberately indifferent to Mr. Greer's health and safety.    The estate sues various named and unnamed MDOC officials on that basis, with an added wrongful death claim arising under state law.    After being served, the defendants timely moved to dismiss under Rule 12(b)(6). (ECF No. 12).    On June 16, 2026, the Magistrate Judge issued a Report and Recommendation that recommended the Court grant the defense motion as to the federal law claims, decline the exercise of supplemental jurisdiction as to the state law claim, and dismiss this case. (ECF No. 20).    On June 30, 2026, Plaintiff—the representative of Mr. Greer's estate—filed her objections. (ECF No. 21).

## DISCUSSION

Plaintiff's objections begin by arguing the Defendants and the Magistrate Judge both misread the applicable law to require more than what is actually necessary to survive a motion to dismiss on a deliberate indifference claim.    The Complaint alleges more than simply that "prisons have drugs," Plaintiff says, and instead it sets out specific factual allegations about drugs at Handlon Correctional Facility that should be enough to survive *Twombly* and *Iqbal*'s pleading requirements under the general standard for deliberate indifference claims set out in *Farmer v.*

2

*Brennan*, 511 U.S. 825 (1994).[1]  But the Magistrate Judge does not recommend the Court grant

the defense motion because Plaintiff had only alleged that prisons have drugs.    Rather, the

Magistrate Judge reasoned that Plaintiff failed to state a deliberate indifference claim under

*Farmer* and those decisions that expressly applied *Farmer* to claims based on prison overdoses.

*See Zakora v. Chrisman*, 44 F.4th 452 (6th Cir. 2022) and *Caraway v. CoreCivic*, 98 F.4th 679

(6th Cir. 2024).    In this, the Magistrate Judge carefully and thoroughly considered the record and

the governing law.    The Magistrate Judge further properly analyzed the law and applied it to

Plaintiff's claims.    Nothing in Plaintiff's Objections changes the fundamental analysis.    Indeed,

the Court agrees with the Magistrate Judge that Plaintiff's Complaint must be dismissed for the

very reasons articulated by the Magistrate Judge.

　　　As the Magistrate Judge recognized, to prevail on the Eighth Amendment claim, a plaintiff

must show that he faced a sufficiently serious risk to his health or safety and that the defendant

---

[1] In brief, the Complaint alleges that in 2017, multiple individuals were arrested for using a drone to smuggle contraband into the Handlon Correctional facility. (Compl. ¶ 20, ECF No. 1, PageID.7). The State of Michigan subsequently recognized opioid abuse was a catastrophic and growing threat, and the State further recognized that prisoners were an especially impacted group. Accordingly, Michigan launched a statewide plan to curb overdoses both inside and outside prisons.    But Plaintiff alleges that unprescribed opioid use continued within the Handlon facility. In 2020, thirteen inmates at Handlon fell ill all at once due to "bad drugs." (Compl. ¶ 21).    In 2022, there were at least five overdoses at the facility, and nineteen overdoses reported in 2023, though Plaintiff believes these are underreported numbers.    (Compl. ¶ 21). Mr. Greer subsequently died of an overdose in February of 2024.    Plaintiff does not provide the total facility reports for overdoses that year, however the MDOC website indicates there were a total of fifteen overdoses at the facility in the 2024 calendar year, and twenty-four overdoses at the facility in 2025. *See* https://www.michigan.gov/corrections (search "critical incident reports").    All this, Plaintiff contends, reflect an ongoing pattern of opioid presence and overdose rick at the facility both before and after Mr. Greer's death.    Even so, Plaintiff alleges that the facility's corrections officers and supervisors failed to implement reasonable measures to reduce the presence of drugs at the facility, such as targeted unit sweeps; K-9 deployments, and other responses.    (Compl. ¶ 41).

official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In *Caraway*, the Sixth Circuit discussed how a claim based on drug overdoses differs from other deliberate indifference claims:

> Ordinarily, the risk facing the inmate is one over which prison officials have exclusive control. Because inmates can't switch cells on a whim, for example, prison officials may not expose an inmate to excessive secondhand smoke from a chain-smoking cellmate. Similarly, because inmates can't simply buy food from the grocery, prison officials may not deny them food and let them starve. In each case, the inmate is unable to avoid an objectively serious risk of harm on his own. When that's the case, as the Supreme Court has told us, prison officials may not sit idly by while that harm comes to pass. By contrast, inmates always retain the ability to choose not

> to take drugs and thereby avoid any risk of overdosing. Thus, the estate's claim adds a twist to the ordinary failure-to-protect theory.

*Caraway*, 98 F.4th at 683-84 (internal citations omitted).

Nevertheless, likening the situation to one based on a prisoner's risk of suicide, a panel of the Sixth Circuit in *Zakora* determined that plaintiff still might be able to meet the objective prong in an overdose claim where the plaintiff alleges, and ultimately establishes, that he was at serious risk of injury from the presence of drugs before the injury occurred.   And more specifically, the plaintiff must allege facts showing an "unfettered access to deadly drugs inside a prison" that creates an objectively excessive risk of overdose.   *Zakora*, 44 F.4th at 472.

But, as *Zakora* explained this does not mean that "simple exposure to drugs" will meet the objective element.   Indeed, there would be "no claim" if this were a "run-of-the-mill drug-overdose case."   *Id.* at 473.   What will distinguish between a "run-of-the-mill" overdose case—on which there is no deliberate indifference claim—and a case with an objectively excessive risk of overdose on which the objective prong may be met?   The court in *Zakora* noted three things that set that case apart and moved the case across the line towards establishing a *Twombly* plausible deliberate indifference claim.   First, there were facts alleged showing the widespread presence of drugs in the decedent's facility of incarceration, including facts about how the drugs got there.   *Id.* at 471.   Second, there were facts alleged that not only was there a widespread presence of drugs at the facility in general, but there were also two overdoses in the decedent's small cellblock two days before the decedent's death.   Third, there were facts alleged that after those immediately

preceding overdoses, but before the decedent's death, the defendants failed to promptly investigate the two prior overdoses in the unit.[2]

The overall point here is that drug use and other prisoner misconduct is a fact of prison life. There is no allegation here that Defendants were actively involved in drug dealing and smuggling; it's all about their alleged failure to act. And that means, for constitutional purposes, that a plaintiff needs to show deliberate indifference. Otherwise, the prisoner misconduct of dealing and ingesting drugs gets pinned on prison officials who have to manage this problem along with all the other difficulties of prison life. What *Zakora* and *Caraway* show about this standard is that to plead a plausible claim of deliberate indifference, the plaintiff must allege a pervasive infestation of drug that is proximate in both time and location. In this case, the Handlon facility was built to house over 1,300 prisoners and actually houses over 1,100. Mr. Greer died on February 14, 2024.

---

[2] There were also facts alleged that an informant told prison officials about the specific operation that was bringing the drugs into the facility and specifically identified the decedent, as a drug user and recipient of the drugs. As the court would later sum up, the allegations in the Complaint were that "the relevant prison officials knew of Zakora's heavy drug use, knew that two of his immediate cellmates had been hospitalized in the 48 hours prior to Zakora's death due to drug overdoses, and yet they failed to initiate a timely investigation to remove the lethal substances from that cell that would have saved Zakora's life." *Zakora*, 44 F.4th at 473-74. So not only where there facts showing the presence of dangerous drugs in close proximity to the decedent, there were also facts alleged that the decedent was inclined to ingest those drugs. Nothing like that is alleged here. The district court case Plaintiff primarily relies upon in the Objections also contains very different facts. In that case, the plaintiff alleged the decedent had reported his cellmate was a drug dealer and that he had to watch his food and drink to avoid drugs being placed inside. *Est. of Leeper v. CoreCivic, Inc.*, 797 F. Supp. 3d 797, 808 (M.D. Tenn. 2025). Furthermore, in the months preceding the decedent's death there were days where there were over twenty nonfatal overdoses. The complaint further alleged that a month before the overdose at issue a more potent batch of drugs entered the specific housing unit where the decedent lived. During that time, inmates in the unit were "nodding off, leaning over, collapsing, and suffering relentlessly from drug overdoses." *Id.* This is far afield from the allegations of the presence of drugs and overdoses at Handlon in general.

MDOC records reflect there were two total overdoses that month, and one the month before.   The year before there were a total of nineteen overdoses at the facility.   The data from 2023 amounts to overdoses from somewhere between one and two percent of the total prisoners at the facility. And there's no detail alleged or provided in the records about overdoses in the specific area where Mr. Greer was housed.   Certainly drug abuse and overdoses, whether inside or outside the correctional setting, is not the result anyone wants.   But the allegations in this case fail to plausibly allege facts reflecting unfettered access to deadly drugs inside a prison.   And for this reason, the Court agrees with the Magistrate Judge that Plaintiff has not met the objective prong of a deliberate indifference claim under *Farmer*.[3]

The Court is of the same mind with the remainder of the Magistrate Judge's analysis too. The Court agrees with the Magistrate Judge that Plaintiff has not plausibly stated a claim for relief under the subjective component of an Eighth Amendment claim too because unlike *Zakora* where the complaint alleged that prison officials had knowledge of the specific operation that was bringing drugs into the prison, Plaintiff only alleges a single event taken place several years earlier where drones were used to bring drugs into the facility.   And unlike *Zakora*, Plaintiff admits that officials acted by arresting those responsible.   The Court also agrees with the Magistrate Judge that Plaintiff has made only conclusory assertions that fail to state a plausibly claim for supervisory liability.   And Plaintiff lacks standing with respect to the request for declaratory and injunctive

---

3 The Court agrees with the Magistrate Judge's subsequent determination that Plaintiff has failed to allege facts allowing a reasonable inference that Defendants violated clearly established law for purposes of qualified immunity.   In the objections, Plaintiff simply rehashes the point that the Complaint alleges enough to pass muster under *Farmer* and that the Magistrate Judge applied an incorrect standard.   The Court disagrees for the reasons stated above.

relief.   Accordingly, the Court agrees with the Magistrate Judge that the motion should be granted as to the federal claims.[4]

That leaves the state law claim.   Because the Court agrees with the Magistrate Judge on the federal counts, the Court agrees with the Magistrate Judge that the Court may decline the exercise of supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(c)(3).   The Court only adds that it would decline the exercise of supplemental jurisdiction over the claim even if one or more of the federal claims remained. Courts may exercise supplemental jurisdiction "over all other claims that are so related to claims . . . within . . . original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a).   A claim is part of the same case or controversy as a claim with original jurisdiction if the two "derive from a common nucleus of operative fact such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case." *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 165 (1997) (internal quotation marks omitted). The claims in this case may derive from a "common nucleus of operative fact," but the Court finds that an exercise of supplemental jurisdiction is not appropriate here. The presence of the state law claim creates a significant risk of juror confusion and would seriously complicate jury instructions. Although the state common law claim and the constitutional claims at issue may contain some overlapping issues, they differ in fundamental ways that would require

---

[4] In the Objection, Plaintiff makes a passing reference requesting leave to file an amended complaint if the Court were inclined to grant the defense motion.   But Plaintiff has never filed a motion to amend with a proposed amended pleading, and so there is no request to amend that is properly before the Court.   *See Lim v. Hightower*, No. 24-3960, 2025 WL 2965692, at *14 (6th Cir. Oct. 21, 2025).

8

separate proofs, separate instructions, and separate damage theories. Accordingly, the Court would decline to exercise supplemental jurisdiction over the state law claim, even if a federal claim remained.

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 20) is **APPROVED AND ADOPTED** as the Opinion of the Court.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (ECF No. 12) is **GRANTED** to the extent specified in this Order.

**IT IS FURTHER ORDERED** that the Court declines the exercise of supplemental jurisdiction over the State law claim.   Count IV is **DISMISSED WITHOUT PREJUDICE.**

This case is **CLOSED.**   A separate Judgment shall issue.

Dated:    July 21, 2026            /s/ Robert J. Jonker
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE

9